**E-Filed 2/27/07**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

MARK SHERWOOD,

Plaintiff,

v.

WAVECREST CORPORATION, et al.,

Defendants.

Case Number C 05-2354 JF (RS)

ORDER[1] DENYING MOTION FOR SUMMARY JUDGMENT BROUGHT BY DEFENDANTS WAVECREST AND LEISZ

[Docket No. 47]

Defendants Wavecrest Corporation ("Wavecrest") and Dennis Leisz ("Leisz") move for summary judgment with respect to the claims of Plaintiff Mark Sherwood ("Sherwood"). The Court has considered the briefing of the parties and the oral arguments of counsel presented at the hearing on February 23, 2007. For the reasons discussed below, the motion will be denied.

## I. BACKGROUND

Wavecrest, a semiconductor capital equipment supplier, hired Sherwood in 1997. At the time of his hiring, Sherwood signed an employment agreement containing a covenant not to

[1] This disposition is not designated for publication and may not be cited.

compete with Wavecrest. Following his layoff from Wavecrest in 1998, Sherwood went to work for GuideTech. Wavecrest considered GuideTech to be a competitor covered by the covenant not to compete, and contacted both Sherwood and GuideTech in December 1998, after which GuideTech terminated Sherwood. Sherwood claimed that Wavecrest had caused his termination from GuideTech and requested that Wavecrest pay attorneys' fees he had incurred in his dispute with GuideTech. The parties began negotiating a possible settlement of this dispute in December 1998.

In May 2000, Sherwood went to work for IMI Semi-Conductor, which subsequently was acquired by Cypress Semi-Conductor ("Cypress"). In June 2002, Sherwood left Cypress and went to work for LeCroy Corporation ("LeCroy"). At the time he left Cypress, Sherwood was involved in a dispute regarding stock options due him by Cypress.

In July 2002, Leisz met with Robert Scott Bausback ("Bausback"), the Chief Operating Officer of LeCroy, to discuss LeCroy's possible acquisition of Wavecrest. During that meeting, Bausback mentioned that LeCroy recently had hired Sherwood. Leisz made some comments about Sherwood, the exact nature and context of which are disputed by the parties. Leisz claims that his comments were purely factual in nature and were made in response to a due diligence inquiry from Bausback as to whether Wavecrest was facing any potential lawsuits. Leisz claims that he stated only that there was a potential suit by Sherwood arising out of the GuideTech dispute. Sherwood claims that Leisz's comments were not in the context of a due diligence inquiry and that Leisz did not state merely that Wavecrest faced a potential lawsuit from Sherwood but rather that Sherwood had sued *every* company for which he had ever worked. LeCroy terminated Sherwood's employment shortly thereafter in August 2002.

Sherwood claims that he believed initially that Bausback terminated him because of a July 10, 2002 letter sent to LeCroy by Cypress, referencing the stock option dispute between Sherwood and Cypress. In that letter, Cypress' corporate counsel expressed concerns that Sherwood would try to use his position at LeCroy to gain an advantage with respect to a potential legal action against Cypress, stated that Cypress preferred not to deal with Sherwood, and hinted that if Sherwood contacted Cypress employees or entered Cypress premises, Cypress might take

its business elsewhere. July 10, 2002 Letter.

In June 2003 Sherwood filed suit against Cypress and LeCroy in the Santa Clara Superior Court, claiming among other things that Cypress had interfered with his contractual relationship with LeCroy. Sherwood thereafter reached a settlement with LeCroy. Pursuant to that settlement, Bausback agreed to prepare and execute a declaration explaining the role that the June 10, 2002 Cypress letter played in his decision to terminate Sherwood. On February 23, 2004, counsel for Bausback and for Sherwood began negotiating the language of Bausback's declaration. Early drafts provided to Sherwood's counsel stated that among the factors contributing to Sherwood's termination were "internal and external feedback regarding his performance." Ultimately, the relevant paragraph of Bausback's declaration, executed on May 12, 2004, read as follows:

> The [Cypress] letter contributed to an assessment that Mr. Sherwood should b e a candidate for inclusion in the August reduction. There were relatively few factors discussed in weighing Sherwood's inclusion in the reduction, including his tenure with the Company, early internal and external feedback regarding his performance, and his compensation. These were the same factors discussed in evaluating each potential candidate for reduction.

May 12, 2004 Bausback Decl. ¶ 6. Neither the correspondence between counsel nor the ultimate declaration made explicit reference to Bausback's July 2002 meeting with Leisz or gave any indication that the "external feedback regarding his performance" encompassed statements made by Leisz during his July 2002 meeting with Bausback.

Bausback was deposed in connection with the state court action on June 10, 2004, at which time he testified that four factors contributed to the decision to terminate Sherwood's employment with LeCroy. He listed the factors as: (1) comments from a company called Amherst Systems ("Amherst")[2]; (2) internal feedback from LeCroy's human resources employee, Janet Moreno; (3) the Cypress letter; and (4) derogatory comments from Wavecrest regarding Sherwood's behavior and performance. June 10, 2004 Bausback Depo. 43:17 - 45:6. With respect to the Wavecrest comments, Bausback testified that he spoke with Leisz and that

---

[2] Sherwood has sued Amherst in the instant action.

although he could not remember the exact words used, a paraphrase would be that Leisz had said that Sherwood "has sued every single company he has ever worked for." *Id*. at 64:8 - 65:5.

Sherwood filed the instant action against Wavecrest, Leisz, Amherst and Amherst's CEO on June 9, 2005, alleging claims for: defamation, interference with contract and interference with prospective business advantage. Following an unsuccessful motion to strike, Wavecrest and Leisz answered on November 16, 2006. Wavecrest and Leisz initially noticed the instant motion for hearing on January 19, 2007, but the Court granted Sherwood's motion for continuance pursuant to Federal Rule of Civil Procedure 56(f) and reset the hearing for February 23, 2007.

## II. LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Anderson*, 477 U.S. 242, 248-49; *Barlow v. Ground*, 943 F. 2d 1132, 1134-36 (9th Cir. 1991).

## III. DISCUSSION

### A. Defamation

Wavecrest and Leisz contend that Sherwood's defamation claim is time-barred and that in any case Defendants are entitled to summary judgment on that claim because Leisz's comments were true, privileged and did not cause Sherwood harm.

The statute of limitations for a defamation claim is one year. Cal. Civ. P. Code § 340(c).

A claim generally accrues when the alleged wrongful act occurs. *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 397 (1999). There is an exception to this general rule for delayed discovery: when the plaintiff does not learn of the alleged act until later, the claim does not accrue until the plaintiff knows or has reason to discover the facts giving rise to the claim. *Id*. Here, Sherwood filed the instant action nearly three years after Leisz's alleged statements in July 2002. However, Sherwood asserts that he had no way of knowing about Leisz's July 2002 statements until Bausback testified regarding those statements on June 10, 2004. Sherwood filed the instant action on June 9, 2005, within the one-year statute of limitations.

Wavecrest and Leisz argue that Bausback's declaration statement regarding "external feedback regarding [Sherwood's] performance" was sufficient to put Sherwood on notice of his defamation claim, and thus that the statute of limitations began running as early as February 2004 when counsel began negotiating the language of Bausback's declaration and at the latest by May 12, 2004 when Bausback executed the declaration. Defendants rely heavily upon *Jolly v. Eli Lilly and Co.*, 44 Cal.3d 1103 (1988) in support of their position. In that case, the California Supreme Court set forth the standards applicable to the discovery rule as follows:

> Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her. As we said in *Sanchez* and reiterated in *Gutierrez*, the limitations period begins once the plaintiff "'has notice or information of circumstances to put a reasonable person *on inquiry* ....'" (*Gutierrez, supra*, 39 Cal.3d at pp. 896-897, quoting *Sanchez, supra*, 18 Cal.3d at p. 101 (italics added by the *Gutierrez* court).) A plaintiff need not be aware of the specific "facts" necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.

*Id*. at 1110-11. Resolution of a statute of limitations issue under the discovery rule normally is a question of fact. *Id*. at 1112. However, where the undisputed facts are susceptible of only one legitimate inference, summary judgment is appropriate. *Id*.

In this instance, the Court simply cannot conclude as a matter of law that a reasonable person in Sherwood's position should have suspected that he had been defamed based upon Bausback's declaration statement that, in addition to the Cypress letter, LeCroy considered

"external feedback regarding his performance" when determining whether to lay him off. While it is possible that a reasonable trier of fact might conclude that the Bausback declaration should have made Sherwood wonder whether he had been wronged by a third party other than Cypress, a trier of fact might well reach the opposite conclusion. On its face, the phrase "external feedback regarding his performance" reasonably indicates that Bausback was speaking of feedback regarding Sherwood's performance at LeCroy. There is no indication that Bausback in fact was speaking of comments regarding Sherwood's character in general that were made by a prior employer. Because a reasonable trier of fact might find for Sherwood on this issue, the Court will deny Defendants' motion for summary judgment based upon the statute of limitations.

Wavecrest and Leisz alternatively argue that the only statement Leisz made about Sherwood during the July 2002 meeting was that Sherwood might sue Wavecrest. Defendants argue that Leisz's statement was true and privileged because it was made in response to a due diligence inquiry from a company that was considering acquiring Wavecrest. If the undisputed evidence supported Defendants' version of the July 2002 meeting, they might be entitled to summary judgment. However, Sherwood cites to Bausback's recent deposition in this case, in which Bausback testified that although he could not remember the exact words used by Leisz, he would paraphrase Leisz's words as stating that Sherwood had sued every single company he had worked for. January 26, 2007 Bausback Depo., 60:12 - 61:22; 62:9-12. Moreover, contrary to Defendants' characterization of the meeting as including due diligence inquiries, Bausback testified that the purpose of the July 2002 meeting with Leisz was to find out about Wavecrest's products and technology, that it was a "getting to know you" meeting. *Id.* Bausback testified explicitly that the meeting was *not* a due diligence meeting. *Id.* at 54:23-25. He stated that at the time of the meeting, the two companies had not even come to the conclusion that they should be "dating." *Id.* at 90:23 - 91:12. Finally, Bausback testified that Leisz's statement left him with the impression that Sherwood was going to be a "looming nightmare" for LeCroy. *Id.* at 82:14-24.

Defendants argue that because Bausback's recollection of the July 2002 meeting is so vague, it is insufficient to refute Leisz's testimony as to what was and was not said at that

meeting. However, although Bausback's recollection is vague, he clearly and unequivocally testified that he understood Leisz to say that Sherwood had sued every employer for which he had ever worked, that this statement was not made in the context of a due diligence inquiry, that the statement left him with the impression that Sherwood was going to be a nightmare for LeCroy. Accordingly, the Court will deny Defendants' motion for summary judgment with respect to the defamation claim.

**B. Interference Claims**

Wavecrest and Leisz contend that Sherwood's interference claims fail because Defendants did not intend to disrupt Sherwood's relationship with LeCroy, did not in fact disrupt that relationship and did not act unlawfully. Defendants' arguments on these points turn upon the Court's acceptance of Leisz's version of events, that is, Leisz's testimony that he merely stated that Sherwood might sue Wavecrest in response to a due diligence inquiry from Bausback. However, as discussed above, Bausback's January 26, 2007 deposition testimony is evidence that Leisz went far beyond stating that Sherwood might sue Wavecrest, and in fact stated that Sherwood had sued *every* employer for which he had ever worked. Bausback's testimony also is evidence that Leisz's statement was not made in the context of a due diligence inquiry. A reasonable trier of fact could infer from Bausback's testimony that Leisz made a gratuitous negative statement about Sherwood in the hopes of ruining Sherwood's relationship with LeCroy. Accordingly, the Court will deny Defendants' motion with respect to the interference claims.

**III. ORDER**

The motion for summary judgment is DENIED.

DATED: February 27, 2007

JEREMY FOGEL
United States District Judge

This Order has been served upon the following persons:

Robert David Baker attyatlaw@earthlink.net

Sarju A. Naran sarjunaran@paulhastings.com

Bradford K. Newman bradfordnewman@paulhastings.com, yvettekillingham@paulhastings.com

John Sherman Purcell johnpurcell@quinnemanuel.com,

Shannon S. Sevey shannonsevey@paulhastings.com, yvettekillingham@paulhastings.com

Nieve Anjomi
Baker & Anjomi
1611 The Alameda
San Jose, CA 95126