**E-Filed 4/20/09**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MARK SHERWOOD,<br><br>Plaintiff,<br><br>v.<br><br>WAVECREST CORPORATION; AMHERST SYSTEMS ASSOCIATES, INC.; DENNIS LEISZ; and MICHAEL K. WILLIAMS,<br><br>Defendants. | Case Number C 05-2354 JF (RS)<br><br>**ORDER[1] DENYING WITHOUT PREJUDICE MOTION FOR ENTRY OF JUDGMENT**<br><br>Re: docket no. 180 |

In this long-ago-filed and now-closed action, Plaintiff Mark Sherwood ("Sherwood") alleged that Dennis Leisz ("Leisz"), the former CEO of Wavecrest, Inc. ("Wavecrest"), made defamatory comments to Sherwood's then-employer, causing the employer to terminate Sherwood. The Court entered a default judgment against Wavecrest on July 2, 2007 and a corresponding "Amended Judgment Fixing Damages" in the amount of $752,106.00, comprising $652.106.00 in economic damages and $100,000.00 for emotional distress. A two-day jury trial on the issue of Leisz's personal liability for the alleged defamation was held on August 28-29,

[1] This disposition is not designated for publication in the official reports.

2007. The jury returned a verdict in favor of Sherwood. On August 30, 2007, while the damages portion of the trial was proceeding, the parties entered into settlement discussions with the Court and placed a settlement on the record. Pursuant to the settlement, Leisz agreed that he would pay Sherwood $150,000.00 in three installments. As a condition, Leisz stated that in the event of default, a stipulated judgment would be entered against him in the sum of $752,106.00–the amount of the default judgment against Wavecrest–less any payments made.[2] Leisz made the first two $50,000 payments on schedule, but he did not pay the remaining $50,000 by the due date.[3] Sherwood therefore moved for entry of judgment in the amount of $652,106.00 against Leisz (reflecting the payment of $100,000), and per the terms of the settlement requested that the judgment be declared non-dischargeable in bankruptcy. The motion for entry of judgment was heard on March 23, 2009. Leisz, who did not file opposition, appeared at the hearing and informed the court that he was seeking counsel. Over Sherwood's objections, the Court granted Leisz's request for a brief continuance.

Now represented by counsel, Leisz opposes the motion for entry of judgment. Leisz explains in a declaration that he became unable to make the final payment after he was forced to resign as CEO of Wavecrest in July 2008, when the company's business dried up and creditors seized its assets. Leisz states further that he attempted to sell his house, planning to use the proceeds to pay the final installment of the settlement, but that the house did not sell. In November 2008, Leisz apparently found a new job paying $95,000 a year. Leisz states that he intends to pay the final installment under the settlement agreement, with interest, as soon as possible. He argues that under the circumstances, entry of the stipulated judgment against him would constitute an unconscionable penalty under California law.

Sherwood, who opposes any further opportunities for cure and requests that the Court

---

[2] The Court retained jurisdiction over this matter to ensure compliance with the terms of the settlement agreement. *See* Transcript of Proceedings, August 30, 2007, Baker Decl., Ex. B, at 537:7-9.

[3] Sherwood also has represented to the Court that Leisz failed to apologize to various parties, as required by the settlement agreement. The Court addresses this contention below.

enter the stipulated judgment in full, disputes whether the judgment would constitute a penalty and argues that California law is inapplicable in the context of a motion pursuant to Federal Rule of Civil Procedure 60(b). With respect to the penalty issue, the Court agrees with Leisz that without an opportunity to cure the default, entry of the stipulated judgment would constitute a penalty. In *Sybron Corp. v. Clark Hosp. Supply Corp*., 76 Cal. App.3d 896 (1978), a breach-of-contract action, the parties entered a settlement requiring that the defendants pay the plaintiff $72,000 in twelve equal monthly installments. The settlement provided that if the defendants defaulted on their payments, a judgment of $100,000 would be entered for the plaintiff after ten days' notice and an opportunity to cure. *Id*. at 898-99. After making $42,000 in payments, the defendants defaulted and the plaintiff obtained a $100,000 judgment. *Id*. The Court of Appeal reversed, holding that the $28,000 difference between the judgment and the amount originally due under the settlement agreement "b[ore] no reasonable relationship to actual damages suffered by respondent as the result of delay" in paying the amounts prescribed by the settlement. *Id*. at 903.

Similarly, in *Greentree Financial Group, Inc. v. Execute Sports, Inc*., 163 Cal. App. 4th 495 (2008), the plaintiff sought $45,000 in damages but the parties agreed to settle for $20,000, payable in two installments. *Id*. at 498. As part of the stipulated judgment, the parties agreed that upon default, judgment would be entered in the amount requested in the complaint. The defendant failed to pay the first installment, resulting in entry of the stipulated $61,000 judgment. *Id*. In reversing the entry of judgment, the Court of Appeal focused on the fact that damages caused by a delay in making monetary payments are easily determinable. *Id*. at 500 (citing *Sybron*, 76 Cal. App. 3d at 900). As in *Sybron*, the Court viewed the difference between the $61,000 judgment and the $20,000 settlement amount as a $41,000 late payment penalty which bore no reasonable relationship to any actual damages caused by the delay. *Id*. at 501-02.

Contrary to Sherwood's assertions, the record is clear that the $150,000 schedule of payments constituted a settlement, not a judgment. *See* Transcript of Proceedings, August 30, 2007, Baker Decl., Ex. B, at 538:1-7 ("The Court: [The $752,106 stipulated judgment is] not going to be executed. It's not going to be recorded unless you default. . . . It's meant to be a

guarantee that you will make the payments according to this agreement."). As in *Sybron* and *Greentree*, the judgment would be entered only upon a default under the terms of the settlement agreement. Despite the lengthy history of prejudicial delay caused by Leisz, the Court finds that entry of a $652,106 judgment against him would run afoul of *Sybron* and *Greentree* absent an opportunity for Leisz to make good on his obligations under the settlement. With respect to whether *Sybron* and *Greentree* apply in the context of a motion for entry of judgment, those cases appear to be the most apposite authority available in the present context.[4]

Consistent with the foregoing, Leisz will be given an opportunity to cure his default. Not later than 5:00 pm PDT on May 11, 2009, Leisz shall tender to Sherwood an amount equal to (1) the outstanding $50,000 payment with interest at the judgment rate from the date the payment originally was due, and (2) Sherwood's attorneys' fees incurred in connection with Leisz's default.[5] Also by that time, Leisz shall file with the Court proof that he (1) has made the required

---

[4] While California law may not be controlling in the context of a motion pursuant to Rule 60(b), it serves as the appropriate guide in the absence of any controlling authority from the Ninth Circuit. *See In re Wescot Intl., Inc.*, 236 B.R. 27, 32-33 & n.3 (N.D. Cal. 1999) (noting, in the context of determining whether entry of a stipulated judgment upon default by a party obligated to make periodic payments under a settlement agreement constituted a penalty, that California law, including *Sybron*, was "very instructive on the . . . issue of whether this type of judgment can constitute an unconscionable penalty"); *see also In re VEC Farms, LLC*, 395 B.R. 674, 688 & n.11 (N.D. Cal. 2008) (citing *Wescot*, *supra*, for the proposition that state law, while potentially not controlling in the context of Rule 60(b), is "pertinent").

[5] In his initial letter, Sherwood's counsel identified approximately $10,000 in costs associated not with Leisz's default under the settlement agreement but with the underlying litigation of the instant matter. Because Sherwood relinquished his right to recover these costs as part of the settlement agreement, he now requests that the Court add the costs to the total sum that Leisz must pay to cure his default. Leisz objects to the inclusion of these costs on the ground, inter alia, that compensation for more than the damage caused by the delayed payment amounts to a sanction as to which the Court first must make a finding of bad faith. *See Leon v. IDX Systems Corp*., 464 F.3d 951, 961 (9th Cir. 2006) ("Before awarding . . . sanctions [pursuant to its inherent sanctioning powers], the court must make an express finding that the sanctioned party's behavior 'constituted or was tantamount to bad faith.'" (citation omitted)); *see also In re Keegan Mgmt. Co., Sec. Litig*., 78 F.3d 431, 436 (9th Cir. 1996) (holding that sanctions pursuant to 28 U.S.C. § 1927 require a finding of recklessness or bad faith).

Sherwood understood the Court to authorize the requested costs at the hearing on March 23, 2009. However, the record is ambiguous, and the Court did not intend to authorize costs unrelated to the default. While the Court is not unsympathetic to Sherwood's request, and in fact

payments, and (2) has fulfilled his obligation to "provide to the Human Resources department at Lecroy Corporation, and to Scott Bausback, a redaction of any disparaging or derogatory comments made by Mr. Leisz to Mr. Bausback." *See* Transcript of Proceedings, August 30, 2007, Baker Decl., Ex. B, at 537:2-6.[6] Because the record in this case amply reflects Leisz's pervasive dilatory behavior throughout this litigation and the resulting prejudice to Sherwood, Leisz will have no further opportunities to cure his default. Thus, should Leisz fail timely to satisfy all of the requirements of this order, a fully non-dischargeable judgment will be entered against him in the amount of $652,106.[7]

**IT IS SO ORDERED**

DATED: 4/20/09

JEREMY FOGEL
United States District Judge

---

agrees that Leisz's conduct throughout the instant litigation has caused considerable frustration and delay, the Court agrees with Leisz that requiring payment of the additional $10,000 would be improper because the record does not support a finding of bad faith with respect to Leisz's delay in making the final payment. Accordingly, the total amount of payment required to cure the default will be $55,100.

[6] The record contains only Sherwood's unsubstantiated assertion that Leisz has not fulfilled his obligations in this respect. If Leisz in fact has done so, he should have no difficulty providing the Court with the required proof.

[7] The terms of the original settlement make clear that the entire $752,106 stipulated judgment would be non-dischargeable in bankruptcy. *See* Transcript of Proceedings, August 30, 2007, Baker Decl., Ex. B, at 534:8-535:7.

This Order has been served electronically upon the following persons:

David J. Cook Cook@SqueezeBloodFromTurnip.com

Hugh Francis Lennon hfl@robinsonwood.com, sas@robinsonwood.com

Jesse Frank Ruiz jfr@robinsonwood.com, seo@robinsonwood.com

John Sherman Purcell johnpurcell@quinnemanuel.com

Leeh A. DiBello leeh_dibello@cmwlaw.net, patricia_inabnet@cmwlaw.net

Nieve Anjomi nanjomi@gmail.com

Robert David Baker attyatlaw@earthlink.net

Ronald Dole Digesti ronald_digesti@cmwlaw.net